Our next case up is 419-0102 City Colleges of Chicago v. IEDLRB For the appellant is Paul Burmeister. You are he, sir? And for the athlete is Ann Mescaleras. Is that pronounced correctly? That's correct, Your Honor, for the Education Labor Relations Board. Okay, and you are going to be speaking for a second, and you'll be speaking for ten minutes? Correct. And Elizabeth Reynolds, you are she? Yes, Your Honor. You'll be speaking first. One thing I want to mention is that before we get started, we always ask lawyers to be ready here early. Because sometimes we're ready to go early, and you're all here. So I want to thank you on behalf of the court so we can get started early. And this is an example of why we make that request. So without further ado then, let me ask Mr. Burmeister, you're the appellant, to speak first. Good morning, Your Honors. May it please the court. My name is Paul Burmeister, and along with my co-counsel, Abby Clark, we represent the Board of Trustees of Community College District No. 508, doing business at the City Colleges of Chicago. You may also hear me refer to them as CCC or the district. I also want to distinguish the fact that when I refer to the word board, I mean the Ed Board and not the Board of Trustees, to hopefully not confuse you, and if there is some confusion, please stop me and ask. It's always good to point this out at the beginning. I thank you, counsel. Okay. The district has three points which it wants to raise with the court today. The facts in this case are not in dispute. But one of the facts that we want to point out and emphasize is the fact that, in this case, has some lengthy history to it. In 2016, there was an unfair labor practice charge with regards to an arbitration award from a 2015 grievance. And that case went to an ALJ decision, and he dismissed the complaint. And in that 2016 ULP, the board also entered an order to affirm the decision of the ALJ and dismiss the complaint. To date, despite the fact that the order from the board has the admonition that the agreed party has 35 days to petition this court for review of the board's final order, the union has never filed a petition for review of that final order of the board. All right, counsel, let me interrupt you briefly because one of the questions here, and you just alluded to it, is our standard of review. You had mentioned that there are no questions of fact. Is that correct? That's correct. If there are no questions of fact, what's the standard of review this court should apply? Well, we know that there is some disagreement between the parties of that. What's your position? Our position is that it's de novo, that if there's no question of fact, that we're here just basically on a question of interpretation of the law. In this case, it would be Section 16A of the Act in the Administrative Review Law, which is incorporated into the Ed Act. Okay, go ahead. Counsel, just a follow-up. Justice Steigman said he wanted you to confirm that there are no questions of fact. Your statement was the facts are not in dispute. Does that matter? Does the standard of review, when we're talking about, can we say we have a mixed question of law and fact when we have facts that are undisputed and we are to apply the law to those facts? Your Honor, I somewhat agree with what you're saying. I've read the cases, and I understand the positions of the Board and the Union in this case. Typically, when reviews come to you from an Administrative Review Law from an administrative agency, often there's questions of application of fact in the law. I read one of the cases that I believe the Board had used, which was the Elementary School District 519. It does say, interestingly, that usually it's a clear error, it's a mixed question of law and fact, and you all can have the opportunity to review those. But in that case, it then goes on shortly thereafter to talk, and I refer to them myself as buckets, where it says that the Court's really going to look at whether it's just a question of fact, whether it's a question of law, or whether it's a mixed question to kind of proceed from there. So while we agree, typically, that this Reviewing Court is going to look and can apply the facts to the law in this case, in this instance, really, there's not really any application to make here. I don't think that there's any other argument to make with respect to this issue that the Union never filed its petition for review in a timely manner. Whether there's some factual issue we can discuss, whether that happened or not, I really can't fathom where that would go. So it's your position, then, unless there are facts in dispute, we don't apply this mixed question of law? I agree. I don't think we need to go down that. That's why I looked at the Elementary School District case, is that I think the Court, yes, that's the first thing they're going to look at, but if you can really kind of define down and pare down what the issue is that we're looking at here. In this case, I think it's pretty easy that it's just the issue. One of the three issues I think we want to talk about is whether, essentially, the Board has the opportunity to basically reopen the case and, as I describe it, take its own appeal of its decision, where the law clearly states that the reviewing body is this Court, and that's where the Union should have gone in 2016. Thank you. I think that pretty much covers most of my first point. The one thing I would say is to kind of get in front of where I think the Board and the Union are going to go with this. And they have some cases that they've cited. They cited the Roadmaster case and the Penzi versus Nicholson, which is a Pennsylvania case reviewing commercial law in Pennsylvania. And, Your Honors, I don't find those cases to be relevant here. Now, the Board and the Union are going to argue, well, of course they can order re-arbitration. That's one of the many, you know, arrows in the quiver that the Board has. But in those cases, there wasn't a question that the party asking for review or to ask for a remand for arbitration, they didn't blow their statutory deadline to ask for that review. Those cases, those parties are properly in front of the reviewing body. And in those cases, and again, I don't want to go down the rabbit hole on that one, but at least in those cases, the re-arbitration was discussed by the courts in those cases. Here, that just doesn't, that just isn't applicable. The cases that are applicable, and, Your Honors, I want to stress in this instance that one thing I've noticed, having been involved in this case for several years and reading the briefs of opposing counsels, is that they're just, this isn't, this doesn't happen every day. This is a pretty rare instance. I've often joked to my colleagues that in 90 years of labor relations jurisprudence, we found pretty much no cases that match what's going on here. However, interestingly, the first district in the Chicago Teachers Union case does, and we agree, and I think that the union had pointed out in its brief that it's dicta, but they do hit pretty much right on exactly what happened here. But they didn't have what happened here at issue in that case. Correct, and I, right, and I, that's true. But I point, but they talk about a kind of an if-then scenario, and I pull that out in the brief, and a part of it, and it wasn't exactly artfully worded, to boil it down, is that if the labor board has an opportunity to rematch, vacated an award, and has not remanded that case to arbitration, that creates the final order, and the agreed party must file its petition for review with the appellate court. That's exactly what didn't happen here. So what would the appellate court review? Well, they could review whether they could remand the case to arbitration or not. Certainly, the union's position, I understand that they're trying to take a position that, this was the second point, Your Honor, you're leading right into it, is that they couldn't procedurally have ever argued that remand to arbitration was within the milieu of possible options the board could have looked at, and frankly, Your Honor, I think that's a stretch. Well, counsel, the issue in the most recent decision was that, is this a binding decision, right? So that's what they would have been contesting, is it or is it not binding, versus are they entitled to re-arbitration. As they argue in their briefs, are we looking at two different issues, two different cases, even though they're all intertwined? Right, and I'll go right to my second point, which is the argument that the parties make, that the board and the union make, is that the labor board has broad remedial powers, that they are the experts, they can fix these problems. So the question that the district has, which I find is a very interesting take by the board in their argument, is that if they have these broad powers and they know they can remand to arbitration, why didn't they? So the question is whether ultimately if this is a binding decision, it's the district's position that once the 2016 final order was entered, that ultimately the decision was made and the litigation had ended. I think part of the question, and I don't want to get too esoteric on this, and one of the questions that's raised is whether there needs to be a final and binding decision on the merits of the underlying grievance. And that, Your Honor, as we've argued, is not found anywhere. They haven't produced any case law to support that decision. The statute doesn't support that. And the issue that we raise, the example is, oftentimes in collective bargaining agreements, there are procedural parts of the grievance procedure that exist. You have 20 days to file your grievance. And an arbitrator can, in theory, state that, well, I'm not going to hear the merits of the case because I didn't follow the procedural requirements of the contract and dismiss the case. The board, for its part, basically doesn't respond to that. And the union tries to say, well, that's not what we're talking about here. But sure it is. There wasn't actually a decision on the merits of the case. It's a procedural question which ended the case. And that is what the district argues happened exactly in this case, that the labor board looked at it in 2016 and said, the case is over. We dismissed the underlying complaint. As we read it, the grievance is over. There's no more avenues for the union to have taken other than to come to this court and ask for a review of the labor board's decision, which they didn't do. And perhaps, Your Honor, that question may be different if we were here in a timely fashion. But I just don't think the union met that burden. We just aren't there. To that extent, again, we want to go turning to the second point with regards to the broad remedial powers. And I don't want to repeat myself here. But again, the union really has argued that while we do have a second case and that we could have somehow, we didn't have a procedural process to do so. And as I said, I don't think the facts lay that out. Clearly, they could have asked for remand. They knew it was something the parties had discussed even prior to the filing of the ULP. The truth is, Your Honor, is that the union took a litigation strategy that they chose. They wanted the whole enchilada. They wanted the underlying arbitration award enforced. And that was the sole strategy they were going to take, and they weren't going to back off it. They didn't back off it once they got the ALJ's decision in 2016. They certainly asked in their brief for any remedies that the board, you know, deems appropriate. They didn't ask for it when they reviewed it to the labor board in 2016. They never bothered to appeal that final order in the first instance to come to this court to ask for re-arbitration. So similarly with the board, I mean, the board kind of makes the same argument. But again, another case that's cited is the amalgamated transit union case. And, Your Honors, I understand that's not a decision that was in an official decision of the court. But again, I ask for some leeway because this just doesn't happen very much. But in that case, what the court had said in the amalgamated transit union case is that one of the arrows in the quiver that the board has as well is they can order a remand arbitration, but one of their other things they can do is their broad remedial powers is to not order re-arbitration and just end the litigation. Let me ask counsel, because I'm not sure I understand the sequence of events here. It was in June 2015 that the ALJ and the original matter determined that the ALJ had made a mistake by coming up with a decision before you had been given an opportunity to fully argue it? Yes, and the arbitrator in that case, the ALJ came from the board. The arbitrator in that case did not... The arbitrator only spoke. Yes, I apologize, Your Honor. Yes, that the arbitrator had rendered a decision in the underlying agreements prior to receiving the final argument of the district, which in this case would come in a written brief. He had already issued his... So the arbitrator subsequently recognized that and suggested that it be submitted for re-arbitration with a new arbitrator? The arbitrator didn't say that. That was a suggestion by the district at that time. Okay, well, that's what you folks suggested? In 2015, prior to going to the labor board, yes. Okay, and what did the union say about that idea? No. Was there any explanation provided? No, none that I know of, none that's in the record. So then, did you folks thereafter refuse to accept the arbitrator's initial draft as the final draft? Yes. That under Illinois law, the means to the... Well, to kind of clarify that, the means under Illinois law for an educational employer to disagree with or not to... to attempt to have a discussion on vacating the underlying award is to not implement the award. And the way that it's kind of done in this state is that the union is then in the position that it needs to go to the... the labor board to have that reviewed. And that's what happened in this case. Why didn't the arbitrator just declare that his order was void and forget about it and let the parties deal with what they were supposed to at that point? An excellent question, because that was raised as well by the district. In fact, in pages C112 to 116 of the record, there's letters from Harper, which is the attorney for the district that handled the arbitration, to Greco actually citing, for example, arbitration canon stating that, I think you need to withdraw from the arbitration at this point and let the parties re-arbitrate. For some reason, Arbitrator Greco disagreed with that, and the union likewise said, well, you don't need to do that. We just want strict enforcement. So after the arbitrator said, I made a mistake, and this should all be done for re-arbitration, and the city or the union declined, then the arbitrator said, well, in that case, my preliminary draft is going to stand as the final draft? That's exactly what happened. That's a very strange result. When I said that this is a very unusual case, it's an unusual case. So thereafter, the union says what? They want to have, I guess that was, they're happy with that decision then, and now it's a question of you didn't comply with it. Correct. The question then is enforcement. And that's what I alluded to earlier, Your Honors, which is I anticipate that the union or the board is going to come up and say, well, geez, we could never have raised the issue of a remand to re-arbitration. Sure, they could have. They knew about it. They can't come here and argue that they were sandbagged or it was completely out of left field that they could have asked for re-arbitration. It was discussed in 2015. Their litigation strategy was to have the award enforced because they liked it, and they lost. And then they didn't petition to the court. You can ask them for whatever reason in the 35 days required. And then when they sought enforcement of that decision, you all suggested that what really needed to happen was re-arbitration, right? Right. In the 2016 ULP, there's two parts. To an administrative law judge, it's true. The district argued to the ALJ that re-arbitration would be one of the – we argued for dismissal, of course, as well. But alternatively, we said, look, if you're not going to dismiss the underlying complaint here, that perhaps re-arbitration should be something that you would look at. And when we got the decision back from ALJ Brosnan sometime in late 2016, he dismissed the whole complaint. And the union then appealed to the Labor Board, which then, in its decision, states that, well, we reviewed the ALJ's decision. We have no change, and we're going to affirm it. And that's where we sat until, lo and behold, several months later, the union comes and files another un-for-labor practice charge alleging that they need an opportunity to re-arbitrate. It's our position that the – you know, the position of the union is that they will create a situation where it's going to fundamentally change LA law. Let me go back. The union says they want to re-arbitrate. And they said you wouldn't do that, and that's the basis of this un-for-labor practice complaint. Isn't the union's position now the same position you had when you said the original arbitrators made a mistake, and therefore that should all be void and should be re-arbitrated, and they disagreed? That was the position of my client in 2015. It's not the position of my client now, but if you're – to answer your question, your answer is yes. In terms of 2015 to 2020, the positions from that 2015 to 2020 have merged and are the same. Well, in other words, once the board said you didn't do anything wrong, essentially, in its 2017 decision – Well, let me – they didn't say you didn't do anything wrong. What they said was because the arbitrator issued this decision without giving you the opportunity to follow your written closing, that that decision is not binding. They did not speak to the merits of the dispute. Right. Correct. They vacated the arbitrator's award in 2016. Okay. So what I'm trying to figure out is what's going on? Why are we all here? Why – if this – if your argument was, and it sounds pretty sound back in 2015, that, hey, the arbitrator screwed up, we shouldn't be doing this all over again with a different arbitrator, as he suggested, and then after lots of paper shuffling, we're back in the same position, and the union says, okay, let's have re-arbitration, and now the city colleges say no. Why no? I see I'm out of time, Rick. No, go ahead. Because I think that's an excellent question you should ask the union, why they didn't agree to it in 2015. Well, of course the question is, why no now by you? Because I think that the positions of the parties have changed somewhat. Well, obviously. It's five years later that when the 2016 decision came down, the case was dismissed, the litigation was over, so it didn't seem to make a lot of sense to the city colleges to then, and the union did ask for re-arbitration once their litigation strategy failed. They then tried to come and resurrect this remand for a new arbitration, but at that point the litigation was closed, which I don't want to take too much time, but that's exactly what was our third point, which is we're creating piecemeal litigation in that point, and that's another reason why we believe that this court should reject and reverse the decision of the board in the 2016. Is my understanding correct? Essentially the only issue before us now is the board said you should have had re-arbitration, and you say we don't like that, we're appealing. The issue before us is whether the union had original jurisdiction. The issue before this court right now is the board says you should have re-arbitrated, and you say you don't want to. I respectfully disagree with that. I think there's other parts of that. Tell me where I'm wrong. I'm struggling to understand it here. Well, I think with respect to the issue of whether you should remand to arbitration, I think there's other parts of it that have to come into place. So I will say that yes, fundamentally, should we be remanding to arbitration or not? I think the first answer to that is that may be something which you could have addressed if it had been properly placed in front of you in 2016 if the union had petitioned for review, but the other two parts of it in this instance are that once the final order is entered, the litigation is done. So what we're doing here is creating a new path and a new remedy, which isn't heretofore recognized under Illinois law, either through case law, the regs of the Ed Act, or the Ed Act itself, that once it goes through and an award is vacated, that, hey, the union can just go back and ask for re-arbitration. Okay. Thank you, Mr. Doudna. Thank you. And Ms. Reynolds, you'll be first. Thank you, Your Honor. May it please the Court, my name is Elizabeth Reynolds, and I represent the City College's Contingent Labor Organizing Committee, IEA, NEA, which you may also hear referred to as the association or the union. I'd like to start. Excuse me. Just out of matter of curiosity, what is the contingent in the title of this organization? Contingent Labor. They represent the adjunct faculty who are considered contingent labor. I'd like to start by correcting the record as to what occurred in the aftermath of the arbitrator's initial award. It was not the arbitrator who suggested in 2015 that the case could go back to another arbitration with a different arbitrator. What happened was that after the college brought the error to Arbitrator Greco's attention, Arbitrator Greco sent a letter to the parties on June 30th of 2015 in which he acknowledged that he had made a mistake and he stated that he would consider his original award to be simply a preliminary draft and that he was inviting the college to file its post-hearing brief as they had originally requested to do, and that he would consider the matter anew and that he would issue a new decision. That was the arbitrator's suggestion as to how to handle the matter and to correct his error. And that letter from the arbitrator is at E93 in the record. So it was the college that said, we want a new arbitrator, and the arbitrator didn't agree to that? The college at that point stated that they believed there should be a new arbitrator. The arbitrator did not directly address that, but the arbitrator ultimately, after some time had passed, sent another letter saying that since the college has declined the opportunity to file a brief, I'm now turning my preliminary award into a final award. Okay, go ahead. The college has, in its brief, raised essentially two arguments, one procedural and one on the merits. What you heard today from counsel focused on the procedural issues, but I would like to address the merits, if I may. The General Assembly's statement of policy in Section 1 of the Educational Labor Relations Act provides that unresolved disputes between the educational employees and their employers are injurious to the public. And in furtherance of that policy, Section 10C of the Act requires that every collective bargaining agreement shall contain a grievance resolution procedure, which shall provide for binding arbitration of disputes. But Petitioner is attempting in this case to turn the arbitrator's procedural mistake to the petitioner's advantage and use that procedural snafu to block the resolution of the underlying contractual dispute. The college states in its brief to this court that there was no violation of the Labor Relations Act because the grievance has already been arbitrated. But that is simply not true. The arbitration procedure was incomplete, as the Educational Labor Relations Board determined in the first proceeding. So when the college says that it has already arbitrated this grievance, it is contradicting the position that it took and prevailed on in the first Unfor Labor Practice case. In that first case to the board, the college argued to the Labor Board that the college, quote, was not allowed to complete its case, unquote, in the arbitration proceedings. And the Labor Board accepted that claim in the first case and ruled that Arbitrator Greco's award was not binding because, quote, City Colleges was not allowed to complete its presentation, unquote. So after prevailing on that argument to the Labor Board in the prior case, the college should not be permitted to come and tell this court that it has already arbitrated the grievance. The parties did take part in an arbitration hearing. That much is true. But that was as far as they got, and they did not receive a valid decision. And the grievance is still unresolved as to what the rights of these employees are under their collective bargaining agreement. Did the union reject the college's request to do this in front of a new arbitrator back in 2015? The union did not respond to that proposal. That sounds like a rejection to me. It is true the union did not accept it. So essentially you all switched sides now. That's exactly what you're now asking to be done in 2020? Well, you could say that we have switched sides, but the reason that the union has switched sides here is that we have accepted the decision of the Labor Relations Board in the first case. At the time when the college proposed in 2015 to go to a new arbitrator, the union believed in good faith that the college had received adequate process from Arbitrator Greco because he had acknowledged that his first award was a mistake. Doesn't that sound like the sentence first and the verdict later? Well, I wouldn't agree with that because the arbitrator had acknowledged that his award was issued in error, and he had assured the parties that he would accept a brief and consider it freshly. The college could have taken that opportunity, but they declined it. Arbitrators like judges are essentially fungible. Why should a party have to be stuck with someone who says, I've decided this case, but I'll go back and try to give it a first set of eyes and let you make your argument now. I mean, doesn't it sound entirely reasonable to say let's get a different arbitrator so we don't have that issue? Well, ultimately, that is what the Labor Board decided in the first case. But your client didn't. Your client's position strikes me as fundamentally unreasonable. Well, Your Honor, at the time, the union did have, we had numerous, and this is not the issue that's before the court now, but the union had numerous pieces of case law that we cited to the board in the first case where there had been various procedural problems and decisions of arbitrators had still been found to be binding. That was the position that we took at that time. The Labor Board rejected it. The college has a good point. Let's get a fresh arbitrator to look at this case. Well, Your Honor, there was a genuine dispute between the parties back at that time in 2015 as to whether Arbitrator Greco's award could be enforced under all the circumstances, including the fact that he could have said let's get a new arbitrator to have a fresh look at this case. The union could have done so at that time. That's true. Counsel, it really seems at each point, whichever party, quote, unquote, won, then they dug in their position. And at no point, as Justice Steinman is pointing out, did the parties just simply say, okay, we want this to be fair for everyone. Let's just do a new arbitration in front of a new judge. Well, the union did at the point when the administrative law judge in the first proceeding ruled against the union. The union at that point did attempt to take the college up on its offer of re-arbitration. That was February of 2017, and it was only two months after the college had filed a brief to the Labor Board advocating quite forcefully, or to the ALJ advocating very forcefully for re-arbitration. The union did attempt to take the college up on its offer at that point, and the college rejected the union. What does an attempt to take them up on their offer mean? We sent a letter after the administrative law judge ruled in the first proceeding. So you said a new arbitration was a new arbitrator? Yes, the union did that, and the college said no. I would like to address the Chicago Teachers Union case briefly, if I may. The petitioner has not acknowledged to this court what the Chicago Teachers Union case actually held. And what the first district stated in that case was that they stated, we hold that the powers granted to the IELRB under Section 15 of the Act include the authority to remand a labor dispute to an arbitrator who has legitimately found a violation of a party's rights under a collective bargaining agreement when the IELRB determines that the arbitrator has exceeded his remedial authority. So what the CTU case says is that if the arbitrator legitimately found a violation of the contract but awarded an invalid remedy, then the IELRB could remand to the arbitrator to fix that remedy. But that was not the situation in this case. And so the petitioner's reliance on the CTU case is misplaced. In our case, there was no arbitrator to remand to at the end of the first labor board proceeding because the labor board had found that arbitrator Greco was not in a position to decide this case. So there was no lower decision maker for them to remand to at that point. Thank you, Counselor. Your time is up. And we will now hear from Ms. Mescaleras. Good morning, and may it please the Court. Assistant Attorney General Ann Mescaleras for the State Respondent Illinois Educational Labor Relations Board. The board did not clearly err in its determination and had the authority to determine that City Colleges violated Section 14A1 of the Act. What is our standard of review? It's clear error. This is a mixed question. Before this Court, is the board's determination. What's the question of fact that makes this a mixed question? No, mixed question. There doesn't have to be a question of fact to make it a mixed question. It has to be application of facts to a statutory standard, which is what the board did in determining that the City Colleges violated Section 14A1 of the Act by refusing to arbitrate the grievance upon the union's demand. So does it mean that the facts are undisputed? The facts can be undisputed. Are they undisputed here? Well, I think the only issue in the board's order that's before this Court is that the union demanded that City Colleges arbitrate or re-arbitrate the grievance. And the board found that because there was an arbitrable grievance, and because the grievance process hadn't yet been completed due to its first order finding that the award wasn't binding, that there was a violation of Section 14A1 of the Act, which prohibits an employer from interfering, restraining, or coercing employees in the exercise of the rights guaranteed under the Act. And for an employer to refuse to arbitrate an arbitrable grievance is a violation of the Act. And as the remedy, the board ordered that upon the union's demand that the City Colleges arbitrate and that it quit refusing to arbitrate the matter. So it is still a mixed question of law and fact. So, again, I don't really understand your answer. Is there a dispute among the parties as to what the facts are? I don't think that there are. Okay. So there's no such thing as a notable review in an administrative case like this one? Well, there can be if it's a pure question of law or a question of statutory interpretation, but that's not what we have here. Well, if there's no question of fact, why isn't it a pure question of law? Because you're applying it because the board applied it to the statutory standard to determine that City Colleges violated the Labor Relations Act. This court should reject City Colleges' attempt to avoid a resolution on the merits of the grievance, completing the grievance process, and the entry of a binding arbitration award, which it contracted for as mandated by the Act. Significant here is the two separate unfair labor practice charges and proceedings adjudicated by the board in two separate and appropriate orders on different issues and alleged violations of the Act. Different conduct was underlying the two different alleged violations of the Act decided in these proceedings. The first case, the 2016 case before the Ed Labor Board, the only issue before the board there was whether the arbitrator's award was binding. Because the unfair labor practice charge there brought by the union against the City Colleges was Section 14A8, which prohibits an employer from refusing to comply with or implement the provisions of a binding arbitration award. It's true. Counsel, I have a question, and I apologize in advance because it really relates more to what your co-counsel was speaking to. She indicated that at some point the union did seek to take the board upon its offer to re-arbitrate. My understanding is that once Greco decided that, okay, I will go ahead and issue my decision, it will be a final decision, that then the union wanted that enforced. That's right. So where does this offer to take them up on their offer to re-arbitrate come in? I can explain that, and that kind of goes to what I was going at. It's two different processes. The union in essence won before the arbitrator, however we feel about that. They won, they got an award, and they won. There's no automatic review of an arbitrator's decision. The employer has to not comply or not implement it. That's how it's reviewed in educational sector under the Act. It's taken as an unfair labor practice charge to the labor board. Right, and that's what the union eventually filed. Right, and so then that's what the union filed. They pressed that the award was binding because they won. City colleges said, no, there was this procedural irregularity during the arbitration. That's our defense to the unfair labor practice charge. The board sided with city colleges and said that's correct after the ALJ and the board. And then after the ALJ decision, which was the recommended decision, and then once again after the board decision in that first case, the union demanded arbitration again. Right, I understand all that, but what I'm trying to understand is this letter that went out. She indicated a letter went out where they offered to take them up on their offer to re-arbitrate. So that happened before they filed the unfair labor charge, before the union filed the unfair labor charge? No, I think the union asked city colleges to arbitrate after the ALJ decision, the recommended decision in the first administrative proceeding, and again after the labor board did it. Okay, you pointed out the union won initially, so they asked for re-arbitration after that? After they lost before the labor board in the first administrative proceeding, not the arbitration. So they didn't ask to re-arbitrate or take them up on their offer to re-arbitrate before filing this unfair labor charge, is that correct? I don't believe so. Now, the labor board isn't involved at the grievance arbitration stage, but the union, once they lost their 14A8 charge at the administrative level, once the ALJ's recommended decision came out, and then again after the first board decision came out, they twice demanded arbitration. And when city colleges declined, that's what precipitated the charge, which led to the order that's before this court. Now, the labor board in the first case determined that there was no binding enforceable award. The union twice demanded arbitration. The union charged city colleges with refusing to arbitrate an arbitral grievance, and that's what the labor board decided in this case. The point is that the board had the authority to improperly order re-arbitration of the grievance in this case upon finding that city colleges violated 14A1 by refusing to arbitrate an arbitral grievance. First, the arbitration process has not been completed because no binding final award has been issued. And that's because in the first administrative proceeding, the labor board, siding with city colleges, said there's no binding award. That's the only thing that was decided in the first case by the labor board. There was no binding award. It's proper to order re-arbitration to arrive at a binding enforceable award when the arbitration process hasn't been completed, where the original award was deemed unenforceable or invalid, as the board did here. Those are the Hahn and Henley cases out of Illinois. And then the board may do so in a subsequent proceeding, after finding that an arbitration award is unenforceable, where that was the sole issue in the first case, where the union, as they did here, made a fresh demand for arbitration, city colleges refused, and then the union brings an action to compel arbitration. The board, in this order on review, said that re-arbitration wasn't an issue in the first case. It was whether the award was binding. And the board's order didn't address re-arbitration. Instead, after the board determined the arbitration award was non-binding and unenforceable, the union then re-demanded arbitration. Could the board have addressed re-arbitration? No, we don't think they could have, by virtue of what was ordered by the charge. It was whether the award was binding, whether city colleges violated the act by failing to implement the arbitration award. And the labor board said they did not violate the act because the award was not binding. Then, there's no binding arbitration award, the process hasn't been completed, the union makes a fresh demand for arbitration, and that's how it proceeds. That is an appropriate process. Even if re-arbitration could have been ordered by the board in its first order, it does not preclude it from ordering it here, when the Section 14A1 violation from the refusal to arbitrate an arbitrable grievance is before it. A request for a second arbitration in order to reach an initial decision about the meaning of a collective bargaining agreement is okay. It doesn't seem that the union waived its right to demand re-arbitration by bringing the second unfair labor practice charge. Again, in the first proceeding, the union sought, and properly so, that the award was binding and enforceable. That's what they pressed, and that was decided by the board. The union has a statutory right under the act to arbitrate an arbitrable grievance, and any waiver of a statutory right has to be clear and explicit. And not seeking relief from the appellate court from the first board order that is not pertinent to that specific unfair labor practice finding by the board in the first order is not a clear and unmistakable waiver. And with that, I'd rest for the remainder of our arguments on my brief and ask that this court affirm the board's final decision. Thank you, Counsel. Mr. Brubmeister? Mr. Brubmeister? Good morning again, Your Honors. May it please the Court. I just have a couple brief responses. I think the overarching question we have here is it's either the board has broad powers or it doesn't. And what the board here is arguing, what the state argued in this case, is that, well, we just didn't have the issue of re-arbitration in front of us, so we just didn't look at it. It doesn't seem to make any sense that they're going to claim, as they do and both parties do in their briefs, that they have broad powers to think that somehow, despite the fact that ALJ talked about re-arbitration in his decision, that the board just waived it and said, well, we're not going to take a look at it because that's not in front of us. It just doesn't make any sense and certainly doesn't seem consistent with the powers granted to the board under the Act. To that extent, just kind of going back, is that, you know, if there was an issue with that, that should have been properly placed before this Court within 35 days from a petition from the union. The other, the AG's office also raised some other issues such as, well, you know, we, you know, the process wasn't completed, so therefore it's proper under 14A1 to submit it to re-arbitration. The district very much disagrees with that, first of all, is that the process was completed. Once the board rendered in the 2016 case that the litigation was over, that's it. The case was over at that point, binding or not. The second part of it is that you will note in the briefs of both parties, pretty importantly, is that there's no site to any case law or statute that gives the board its right to re-arbitrate. Now, I know I didn't have a chance to talk about this in the beginning, but I just want to briefly touch on this, is that it would create a lot of confusion that if there's issues with respect to vacated and arbitration award and then the party, and it's vacated, whether the party has an automatic right to re-arbitrate. It's not considered in statute. It's not considered in any case law. It's an issue of first impression by this Court, and if you agree with that position, you're essentially taking that out of the possibilities of the Labor Board to fix labor relations problems and create a new remedy that does not heretofore exist. There's nothing in the statute or any case law cited by anyone that says there has to be a final and binding award on the merits of the case. It just doesn't exist. And if this Court agrees and affirms the Labor Board's decision, that will then become the new law in this state. Briefly, with regards to the union's arguments, she cited the statute saying that unresolved disputes are injurious to the public. We agree. However, in this case, the matter was resolved in 2016 when the Board dismissed the underlying complaint, which then ended the litigation on the underlying grievance. The other issue, and I just want to briefly touch on, is with respect to the Chicago Teachers Union case, which we also stated that we agree that it wasn't necessarily that the underlying parts are on point. But again, Your Honors, it's a pretty rare instance here. The part that we parsed out in the brief is directly on point with respect to what the process should have done after the Board had rendered its decision in 2016, and that was for the union to have filed its petition to review to the appellate court. For these reasons, Your Honors, the City College of Chicago respectfully requests that this court reverse the decision of the Illinois Educational Labor Relations Board in its 2018 decision and allow the 2016 decision to stand as is. Thank you, Your Honors. Thank you, Counsel. The court is adjourned until recess. The opinion of the advisers will be in recess until the Senate.